# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Norman B. Cummings,

       Plaintiff,

                              Case No. 2:10-cv-982
                              Judge Smith
   v.                           Magistrate Judge Kemp

Jon Husted, Ohio Secretary of
State,[1] *et al.*,

       Defendants.

Timothy Crawford, *et al.*,

       Plaintiffs,

                              Case No. 2:10-cv-983
   v.                           Judge Smith
                              Magistrate Judge Kemp

Jon Husted, Ohio Secretary of
State, *et al.*,

       Defendants.

LetOhioVote.org, *et al.*,

       Plaintiffs,

                              Case No. 2:10-cv-1148
   v.                           Judge Smith
                              Magistrate Judge Kemp

Jon Husted, Ohio Secretary of
State, *et al.*,

       Defendants.

---

[1] When Plaintiffs filed their lawsuits in these three consolidated cases, the Ohio Secretary of State was Jennifer Brunner.  The current Secretary of State, Jon Husted, is substituted as a party pursuant to Fed. R. Civ. P. 25(d).  Under Rule 25(d), a public officer's successor is automatically substituted as a party.

## OPINION AND ORDER

Plaintiffs initiated these three consolidated actions against Ohio's Secretary of State ("Secretary") and the Ohio Elections Commission ("Elections Commission") in response to the Secretary's actions relating to an investigation of the campaign finances of LetOhioVote.org, a ballot-issue committee, that was formed to get a referendum issue on the statewide ballot in an effort to repeal "video lottery terminal" provisions of Ohio law.  Case No. 2:10-cv-982 involves Plaintiff Norman B. Cummings' claims against the Secretary and the executive director and members of the Elections Commission (collectively the "Elections Commission Defendants").  Case No. 2:10-cv-983 involves the claims of Plaintiffs Timothy Crawford and New Models against the Secretary and the Elections Commission.  And Case No. 2:10-cv-1148 involves the claims of Plaintiffs LetOhioVote.org and its members (collectively the "LetOhioVote.org Plaintiffs") against the Secretary and the Elections Commission Defendants.[2]

This matter is currently before the Court on the Secretary's Motions to Dissolve the State Court Injunction in Case Nos. 2:10-cv-982 (Doc. 9) and 2:10-cv-983 (Doc. 10), and the Secretary's Motion to Dismiss in case No. 2:10-cv-1148 (Doc. 22).[3]  For the reasons that follow,

---

[2] In all three cases, the Plaintiffs named the Elections Commission as a defendant, but subsequently voluntarily dismissed their claims against it pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  The claims against the other Elections Commission Defendants that remained pending in case Nos. 2:10-cv-982 and 2:10-cv-1148 were subsequently dismissed without prejudice, by agreement of the parties.  (*See* Doc. 41 in case No. 2:10-cv-982 or Doc. 37 in case No. 2:10-cv-1148).

[3] The Court's docket indicates that there are four other currently pending motions in these cases.  Namely, the docket in case No. 2:10-cv-982 indicates that Documents 4 (Plaintiff Cummings' Motion for Temporary Restraining Order filed in Franklin County Common Pleas Court) and 5 (Plaintiff Cummings' Motion for Preliminary Injunction filed in Tenth District Court of Appeals for Ohio) are still pending.  The docket in case No. 2:10-cv-983 indicates that Documents 4 (Motion for Temporary Restraining Order and Preliminary Injunction filed in

the Court **DENIES** the Secretary's Motions to Dissolve and **GRANTS** the Secretary's Motion to Dismiss.

## I.      Background

In July 2009, the Ohio General Assembly (the "General Assembly") passed, and the Governor signed, Am.Sub.H.B. No. 1 (the 2010-2011 budget bill) ("H.B. 1"), which authorized "video lottery terminals" at Ohio horse racing tracks as a means to raise revenue. The ballot-issue committee LetOhioVote.org advocated for placing a referendum on the statewide ballot concerning the provisions of the budget bill relating to video lottery terminals. A preliminary issue arose as to whether the video lottery terminal provisions of H.B. 1 were subject to referendum under Ohio law. In *State ex rel. LetOhioVote.org v. Brunner*, 916 N.E.2d 462 (Ohio 2009), the Ohio Supreme Court held that these provisions were subject to referendum. *Id.* at syllabus. Consequently, in December 2009, LetOhioVote.org filed a referendum petition with the Secretary, who notified LetOhioVote.org that its petition was deficient by approximately 27,000 signatures. After LetOhioVote.org supplemented the petition with over 175,000 additional signatures, the Secretary certified the video lottery terminal provisions of H.B. 1 to the November

---

Franklin County Common Pleas Court by Plaintiffs Timothy Crawford and New Models) and 5 (Motion for Preliminary Injunction Pending Appeal filed in Tenth District Court of Appeals for Ohio by Plaintiffs Timothy Crawford and New Models) are still pending. Although the state courts addressed these motions, the parties seek to have this Court readdress the issue of whether injunctive relief is appropriate. Therefore, the central issue of whether the Plaintiffs in these two cases are entitled to injunctive relief is placed squarely before the court, via these motions as well as the Secretary's motions to dissolve, and will be resolved by this Opinion. Furthermore, although these Plaintiffs initially only sought a temporary restraining order and/or preliminary injunction, the briefing addresses all the legal issues in these cases, and there are no triable issues of fact remaining. Thus, the Court will consider Plaintiffs' motions as seeking both a preliminary and permanent injunction. *See United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983) ("Where there are no triable issues of fact remaining to be resolved, the Court may properly convert a preliminary injunction to a permanent injunction without an evidentiary hearing.").

2010 ballot for a referendum election.  LetOhioVote.org, however, ultimately withdrew the issue from the ballot in June 2010, and therefore the Ohio electorate did not vote on the issue.

LetOhioVote.org's campaign activity required it to file a finance report pursuant to Ohio Revised Code § 3517.11.  In January 2010, LetOhioVote.org filed its annual campaign-finance report for the 2009 calendar year with the Secretary.  Pursuant to Ohio Revised Code § 3517.10, the report was required to detail, among other things, the contributions to LetOhioVote.org.  To this end, LetOhioVote.org listed $1,551,000 in contributions received in 2009, and reported that all of these contributions were received from Plaintiff New Models.

The Secretary's staff examined LetOhioVote.org's 2009 report and identified possible irregularities and noncompliance with Ohio campaign-finance law.  Seeking to further investigate the matter, the Secretary's office issued subpoenas to Plaintiff Norman Cummings,[4] Plaintiff Timothy Crawford,[5] the custodians of records of Plaintiff New Models and LetOhioVote.org, and other persons associated with LetOhioVote.org.  The subpoenas issued to Cummings, Crawford, and the custodian of records of New Models were sent to addresses in the Commonwealth of Virginia.  Cummings and Crawford reside in Virginia, and the registered agent of New Models is located in Virginia.  The remainder of the subpoenas that were issued as part of the investigation of LetOhioVote.org were issued to persons in Ohio.  The subpoenas were issued under the purported authority of Ohio Revised Code § 3501.05(N) and (CC), required these persons to appear and testify as witnesses at depositions scheduled for March 5, 2010, and to produce certain documents relating to LetOhioVote.org and New Models.  The subpoenas also threatened

---

[4] Plaintiff Cummings is a "political consultant" to LetOhioVote.org.

[5] Plaintiff Crawford is the President of Plaintiff New Models.

criminal sanctions under Ohio Revised Code § 3599.37 for the failure to appear, testify, and produce the requested documents. The day after Secretary Brunner issued the subpoenas, she issued a press release titled "Secretary Brunner Opens Campaign-Finance Investigation Regarding LetOhioVote.org." The press release reflected the Secretary's opinion that LetOhioVote.org had violated Ohio campaign-finance law by concealing the true sources of its funding.

On March 1, 2010, Plaintiffs filed original actions for writs of prohibition in the Ohio Supreme Court, to prevent the Secretary from enforcing the subpoenas. On May 3, 2010, the Ohio Supreme Court denied the requested writs of prohibition. *State ex rel. LetOhioVote.org v. Brunner*, 928 N.E.2d 1066 (Ohio 2010). For the Plaintiffs to have been entitled to the requested writ, they were required to establish that by issuing the subpoenas, (1) the Secretary was exercising judicial or quasi-judicial power, (2) the exercise of that power was unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *Id.* at 1069. The Ohio Supreme Court determined that the Secretary did not exercise judicial or quasi-judicial authority in issuing the subpoenas, and therefore Plaintiffs were not entitled to the requested extraordinary relief in prohibition. *Id.* at 1071. Because Plaintiffs did not meet the first requirement for the issuance of a writ of prohibition, the Court expressly declined to address other issues presented in the case, including whether the Secretary lacked authority to issue the subpoenas. *Id.* at 1071-72. The Court noted in its conclusion, however, that its decision "does not leave [the] relators without an adequate remedy, for a challenge may be made to the propriety of the subpoenas in a common pleas court action for a prohibitory injunction." *Id.* at 1071.

Following the May 3, 2010 decision of the Ohio Supreme Court, the Secretary issued a

new round of subpoenas to Plaintiffs, which were substantively the same as the previous

subpoenas, and which required them to appear in Ohio in June 2010.  In response,

LetOhioVote.org, and members of the committee, filed a lawsuit in the Hamilton County Ohio

Court of Common Pleas seeking declaratory and injunctive relief to effectively quash the

subpoenas.  The Secretary agreed not to enforce the subpoenas until the trial court filed a decision

on the merits.  Plaintiffs Cummings, New Models, and Crawford moved to intervene in the action,

which the court denied on September 22, 2010.  On the same day, the court also denied the

declaratory and injunctive relief requested by LetOhioVote.org and its members.  The Hamilton

County Court of Common Pleas determined that the Secretary has the authority to investigate

election law irregularities, including failures to comply with campaign finance disclosure law, and

he has the power to issue subpoenas in furtherance of his investigations.  (Doc. 2-11).

LetOhioVote.org and its members appealed the decision of the Common Pleas Court to the Ohio

First District Court of Appeals; the appeal is currently pending.

On September 24, 2010, the Secretary issued a third round of subpoenas to Plaintiffs

Cummings, Crawford, and the custodian of records for New Models, which required these

Plaintiffs to appear to testify as a witness on October 6, 2010, at the Secretary's office, and

required Plaintiffs to produce documents related to Plaintiff New Models' relationship and

contributions to LetOhioVote.org, including documents revealing the identity of contributors to

New Models.  Like the other subpoenas, the third round of subpoenas cite Ohio Revised Code §

3501.05(N) and (CC) as authority for the issuance of the subpoenas, and threaten criminal

sanctions under Ohio Revised Code § 3599.37 for the failure to appear, testify, and produce the

requested documents.  The Secretary included a copy of Part C and D of Rule 45 of the Ohio

Rules of Civil Procedure with the subpoenas.

On October 1, 2010, Plaintiffs Crawford, New Models, and Cummings commenced actions in the Court of Common Pleas, Franklin County, Ohio, seeking declaratory and injunctive relief enjoining the Secretary from attempting to enforce the third set of subpoenas and thereby compelling these Plaintiffs' attendance in Ohio on October 6, 2010. The Common Pleas Court denied these Plaintiffs' request for a temporary restraining order on October 5, 2010. On the same day, these Plaintiffs appealed the trial court's decision to the Ohio Tenth District Court of Appeals. Pursuant to Ohio Appellate Rule 7(A), the appellants moved for injunctions pending appeal. On October 6, 2010, the Tenth District Court of Appeals issued a journal entry granting the appellants' motions for injunctions pending appeal. The appellate court's journal entry simply provides as follows: "Appellants' October 5, 2010 motions for injunctions pending appeal are granted. Appellee is hereby enjoined from enforcing her subpoenas or otherwise conducting depositions of appellants until and after this court determines these appeals. No bond shall be required as a condition of this injunction." On October 12, 2010, the Tenth District denied the Secretary's request for an expedited briefing schedule.

On October 29, 2010, the Secretary removed the state court actions initiated by Plaintiffs Cummings, New Models, and Crawford, to this Court. These actions are assigned case Nos. 2:10-cv-982 and 2:10-cv-983 in this Court. On November 22, 2010, the Secretary moved to dissolve the state court injunction in both cases (Docs. 9 and 10). On December 21, 2010, the LetOhioVote.org Plaintiffs initiated their action in this Court, seeking declaratory and injunctive relief relating to the Secretary's efforts to investigate LetOhioVote.org (assigned case No. 2:10-cv-1148). The LetOhioVote.org Plaintiffs allege, *inter alia*, violations of the freedom of speech

and due process clauses of the United States Constitution.  These Plaintiffs also seek declarations that (a) Ohio law does not require, under any circumstance, an Ohio statewide ballot issue committee, such as LetOhioVote.org, to discover the identity of the donors of their corporate contributors, or, if the identity is known by such committee, to report the identity of those donors in any required campaign finance filing, and that (b) LetOhioVote.org was and is not required to file either a semiannual campaign finance report for 2010 under Ohio Revised Code § 3517.10(A)(4), or an annual campaign finance report for 2010 under Ohio Revised Code § 3517.10(A)(3).  On March 1, 2011, the Secretary, in case No. 2:10-cv-1148, filed a Motion to Dismiss for failure to state a claim (Doc. 22).  On March 3, 2011, the Elections Commission Defendants filed a Motion to Dismiss for failure to state a claim and for lack of jurisdiction in case No. 2:10-cv-1148 (Doc. 23).  And on March 8, 2011, the Elections Commission Defendants filed a Motion to Dismiss for lack of jurisdiction in case No. 2:10-cv-982 (Doc. 29).  The Elections Commission Defendants' Motions to Dismiss were rendered moot by the parties' agreed order of partial dismissal filed May 24, 2011, which dismissed without prejudice all remaining claims brought against the Elections Commission Defendants in case Nos. 2:10-cv–982 and 2:10-cv-1148.

All three cases have been consolidated in this Court (Doc. 15 in case No. 2:10-cv-983 and Doc. 13 in case No. 2:10-cv-1148), and this matter is currently before the Court on the Secretary's Motions to Dissolve the State Court Injunction in case Nos. 2:10-cv-982 (Doc. 9) and 2:10-cv-983 (Doc. 10), both of which involve the central issue of whether Plaintiffs Cummings, New Models, and Crawford are entitled to injunctive relief, and the Secretary's Motion to Dismiss in case No. 2:10-cv-1148 (Doc. 22).  These motions, and the issues presented therein, are fully

briefed and ripe for disposition.  The Court will address the merits of these motions in turn.

## II.    Secretary's Motions to Dissolve State Court Order

The Secretary argues that the state court injunction should be dissolved for technical or procedural reasons and because Plaintiffs Cummings, New Models, and Crawford fail to substantively demonstrate their entitlement to injunctive relief.  The Court will first address the Secretary's non-substantive arguments and then his substantive arguments.

### A.    Viability of State Appellate Court's Decision in View of the Procedural Posture of these Cases and Said Court's Absence of Reasoning Supporting its Decision

Actions that are removed from state court to federal court are to proceed as if they had been commenced in federal court.  *Freeman v. Bee Machine Co.*, 319 U.S. 448 (1943); *Sturgill v. Chema Nord Delekkemi Nobel Indus.*, 687 F. Supp. 351, 354 (S.D. Ohio 1988) (Spiegel, J.). "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."  28 U.S.C. § 1450.  Thus, the federal court "take[s] the case as though everything done in the state court had been done in the federal district court."  *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). That is, "[a]fter removal, the federal court 'takes the case up where the State court left it off.' "  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974) (citing *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)).  However, "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."  *Id.* at 437.  Therefore, while an interlocutory state court order generally remains effective upon removal to federal court, the federal court may determine the appropriateness of the order and dissolve or modify it as

necessary.

Here, the Secretary argues that the state appellate court's decision to grant injunctive relief should be dissolved because the court failed to make specific findings required to support an injunction and because the court granted the injunctions "pending appeal" which no longer applies as these cases are not on appeal after their removal to this Court. Plaintiff Cummings argues that this Court has the authority to continue the injunction imposed by the state court. Similarly, Plaintiffs New Models and Crawford argue that this Court should continue to enforce the order of the state court.

The Secretary is correct that federal law requires a district court, in granting or denying a motion for injunctive relief, to make specific findings concerning the applicable standard. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *see also* Fed. R. Civ. P. 52(a) (providing that in "granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions that support its action"), and Fed. R. Civ. P. 65(b) (requiring every order granting an injunction to state the reasons why it issued). "The purpose of these rules is to provide an appellate court with a clear understanding of the district court's decision." *Six Clinics Holding Corp., II*, 119 F.3d at 400. The Secretary is also correct that there is no longer an appeal pending, because the cause was removed to this court, and therefore the state court's decision arguably is no longer effective insofar as the state court's decision restricted the injunction to the period in which the appeal was pending.

In the final analysis, however, whether the state court decision must be dissolved because the decision did not provide reasons for the injunction, or because the case is no longer "pending appeal," is largely academic. If this Court would dissolve the state court decision for one or both

10

of these two reasons, the Court would still need to determine whether Plaintiffs Cummings, New Models, and Crawford are entitled to injunctive relief.  That is, the procedural posture of the cases involving these Plaintiffs places the issue of whether they are entitled to injunctive relief squarely before this Court.  Therefore, the Court will now address this substantive issue.

      B.      Plaintiffs' Request for Injunctive Relief

The Secretary argues that Plaintiffs Cummings, New Models, and Crawford have failed to demonstrate that they are entitled to injunctive relief.

      1.      Injunctive Relief Standard

Rule 65(b) of the Federal Rules of Civil Procedure permits a party to seek injunctive relief to prevent immediate and irreparable injury.  A court considers four factors in determining whether to grant the extraordinary remedy of injunctive relief:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.  *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The standard for granting a permanent injunction is "essentially the same," as that for a preliminary injunction, except that a plaintiff must demonstrate actual success on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 (1987).  "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met."  *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001). Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate.  Thus, "[a]lthough no one factor is controlling, a finding that there is simply

11

no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

2.      Discussion

a.      Likelihood of Success on Merits

At issue is whether the Secretary has the authority to conduct campaign finance investigations, and if he does, whether he has the authority to issue subpoenas to witnesses outside the State of Ohio in connection with such investigations. Also at issue is whether the Secretary's issuance of subpoenas to Plaintiffs outside of Ohio violates federal due process. Plaintiff Cummings argues that the Secretary does not have the authority to conduct investigations of campaign finance law violations. Plaintiffs Crawford, New Models, and Cummings all argue that Ohio Revised Code 3501.05 does not authorize the Secretary to subpoena witnesses outside the State of Ohio, and that the issuance of said subpoenas to them violates federal due process. Conversely, the Secretary argues that he has the authority to issue subpoenas as part of investigations of campaign finance law violations, that his subpoena authority is not limited to the boundaries of Ohio, and that it was therefore proper to issue subpoenas to these Plaintiffs at addresses in Virginia.

The Court will first address the issue of whether the Secretary has the authority to conduct campaign finance investigations. Plaintiff Cummings argues that the Secretary does not have this authority because the Elections Commission is the duly authorized administrative agency assigned the task of investigating possible violations of Ohio campaign finance laws. According to Plaintiff Cummings, the Secretary's duties regarding campaign finance violations are limited to examining filed statements for compliance, notifying the filer of any deficiency in the filing, and reporting any

12

violations to the Elections Commission. The Secretary argues that even though the Elections Commission has exclusive authority to adjudicate violations of campaign finance law, that exclusivity does not extend to the power to investigate such violations.

In the decision of the Hamilton County Court of Common Pleas, which is cited above and which relates to the action filed in that court by LetOhioVote.org and its members, the court thoroughly discussed the issue of whether the Secretary has authority to investigate failures to comply with campaign finance disclosure law and determined that the Secretary has the authority to investigate these violations. However, that decision did not involve out-of-state subpoenas, and it is currently on appeal. Nonetheless, for the purpose of this Court's decision, the Court will assume that the Secretary is authorized to investigate possible violations of Ohio campaign finance laws.

The Court will now address the issue of whether the Secretary has the power to issue subpoenas to persons outside the State of Ohio in the performance of his duties. There is no ongoing judicial proceeding involving this issue, other than the instant action. Before beginning its analysis of this issue, the Court notes that, in view of the Eleventh Amendment, a federal court ordinarily cannot direct a state official to conform his or her conduct to state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (discussed further below). However, the injunctive actions against the Secretary filed by Plaintiffs Cummings, New Models, and Crawford, are before the Court after the Secretary removed these actions to this Court. Because the issue of whether these Plaintiffs are entitled to injunctive relief necessarily involves resolution of the preliminary issue of the nature of the statutory subpoena authority of the Secretary, the Court finds that the Secretary has effectively waived any Eleventh Amendment immunity that

13

would prevent this court from granting relief solely on the basis of state law.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) ("removal is a form of voluntary invocation of a federal court's jurisdiction" that constitutes "a waiver of Eleventh Amendment immunity").

The Secretary's authority to issue subpoenas in connection with investigations is set forth in Ohio Revised Code § 3501.05, which provides in pertinent part as follows:

> In the performance of the secretary of state's duties as the chief election officer, the secretary of state may administer oaths, issue subpoenas, summon witnesses, compel the production of books, papers, records, and other evidence, and fix the time and place for hearing any matters relating to the administration and enforcement of the election laws.

Plaintiffs Cummings, New Models, and Crawford, acknowledge that Ohio Revised Code § 3501.05 grants the Secretary authority to issue subpoenas in the performance of his duties as Ohio's chief election officer.  They argue, however, that the Secretary does not have the power to subpoena witnesses outside the state of Ohio.  Resolution of this issue is a matter of statutory construction.

Under Ohio law, the primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute.  *State v. Lowe*, 861 N.E.2d 512, 514 (Ohio 2007); *see State v. Jackson*, 811 N.E.2d 68, 74 (Ohio 2004) ("The paramount consideration in determining the meaning of a statute is legislative intent.").  Thus, the starting point for understanding the meaning of an Ohio statute is the plain language of the statute itself.  *Lowe*, 861 N.E.2d at 514.  "Statutory language that is plain and unambiguous, and conveys a clear and definite meaning, needs no interpretation."  *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 192 (Ohio 1998); *Hubbard v. Canton City Sch. Bd. of Educ.*, 780 N.E.2d 543, 546 (Ohio 2002) ("where the language of a statute is clear and unambiguous, it is the duty of the court to enforce

14

the statute as written, making neither additions to the statute nor subtractions therefrom."). A

statute is ambiguous, however, when it is subject to more than one reasonable interpretation.

*Family Medicine Found., Inc. v. Bright*, 772 N.E.2d 1177, 1179 (Ohio 2002).  If an Ohio statute

is ambiguous, a court may consider laws upon the same or similar subjects in order to determine

legislative intent.  *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. Of Health*, 772 N.E.2d 536, 541 (Ohio

2002).  Furthermore, a reviewing court must not construe a statute so as to supply words that are

omitted.  *State v. S.R.*, 589 N.E.2d 1319, 1323 (Ohio 1992).

The language of Section 3501.05, which empowers the Secretary to issue subpoenas in

the performance of his duties as the chief election officer, is silent on the jurisdictional scope of

that authority.  The Secretary argues that the silence reflects an intent to not limit the Secretary's

authority to issue subpoenas, whether in the state or out of the state.  Plaintiffs argue that Section

3501.05 does not grant the Secretary any extraterritorial powers, and the Secretary's powers

should be interpreted as consistent with the powers of Ohio courts and the Elections Commission.

Plaintiffs argue that the Secretary's authority to subpoena, like the Elections

Commission's authority, does not reach beyond Ohio.  The Secretary argues that the jurisdictional

limit of his subpoena authority is different than the Elections Commission's authority.  The

Elections Commission's authority to subpoena witnesses is set forth in Ohio Revised Code §

3517.153(B), which provides in part:  "The commission or a member of the commission may

administer oaths, and the commission may issue subpoenas to any person *in the state* compelling

the attendance of witnesses and the production of relevant papers, books, accounts, and reports."

(Emphasis added).  The Secretary points to the emphasized language of this statute as

demonstrating the General Assembly's awareness of how to limit the jurisdiction of an

administrative subpoena.  And, because the language empowering the Secretary to issue subpoenas does not contain the same or similar language, the Secretary argues that the General Assembly intended to authorize him to issue subpoenas outside the state.

But when the General Assembly intends to provide statutory authority, to an official or agency, that reaches beyond Ohio, it knows how to expressly demonstrate such intent.  For example, the General Assembly authorizes the Ohio Department of Taxation to "cause depositions of witnesses residing *within or without the state* to be taken in the manner prescribed by law for like depositions in civil actions in courts of common pleas."  Ohio Rev. Code § 5703.32 (emphasis added) ; *see also* Ohio Rev. Code § 4121.20 (authorizing the Ohio Bureau of Workers' Compensation, "in any investigation cause depositions of witnesses residing *within or without the state*[.]") (Emphasis added).  Even though these statutes concern investigations not relating to campaign finance law, they illustrate the General Assembly's method of demonstrating its intent to authorize investigations reaching beyond Ohio.  Thus, while the General Assembly could have inserted language expressly limiting the subpoena power, it could have alternatively inserted language extending the subpoena power beyond Ohio.

It is the general rule in Ohio that public officials have both such powers as are expressly conferred by statute and such powers as may be reasonably and necessarily inferred from the statutory powers.  *Stark-Tuscarawas-Wayne Joint Solid Waste Management Dist. v. Republic Services of Ohio II, LLC*, Case No. 2004-CA-00099 (Ohio Ct. App. Mar. 7, 2005) (citing *State ex rel. Finley v. Lodwich*, 29 N.E.2d 959 (Ohio 1940)); *see State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 724 N.E.2d 411, 417 (Ohio 2000) ("An administrative agency has no authority beyond the authority conferred by statute and it may

16

exercise only those powers that are expressly granted by the General Assembly"); *see also Shell v. Ohio Veterinary Med. Licensing Bd.*, 827 N.E.2d 766, 770-71 (Ohio 2005) (holding that a state agency "has only those powers explicitly delegated by statute and must operate within whatever limitations are contained within its enabling statutes").

     The statute authorizing the Secretary to issue subpoenas does not expressly address the jurisdictional limits on this authority.  That is, the General Assembly has not expressly granted to the Secretary the authority to subpoena out-of-state witnesses.  Such authority does not reasonably and necessarily derive from the Secretary's authority to subpoena witnesses.  The Secretary's authority to subpoena obviously extends throughout Ohio, and this authority is necessarily implicit in the authorizing statute.  But this authority does not necessarily extend beyond Ohio, especially in view of the fact that the General Assembly has not authorized the Elections Commission to subpoena out-of-state witnesses, even though it adjudicates complaints alleging violations.  Authorizing the issuance of subpoenas to out-of-state witnesses raises practical and constitutional considerations that are different than those associated with in-state subpoenas.  For example, out-of-state subpoenas implicate such issues as due process concerns, higher travel expenses (whether reimbursable or not), and potential enforcement problems.  In view of these concerns, it cannot be necessarily inferred from the applicable statute that the Secretary's authority to subpoena extends beyond Ohio.  In sum, the Court finds that the Ohio General Assembly has not expressed an intent to extend the Secretary's subpoena power beyond that granted to the Elections Commission.  Absent such intent, the Secretary lacks the authority to subpoena out-of-state witnesses.

     Because the Secretary does not have the authority to issue out-of-state subpoenas, it is

unnecessary to resolve the due process question.

        b.      Irreparable Injury

Having demonstrated success on the merits, Plaintiffs also demonstrate that they would be irreparably injured by the enforcement of subpoenas issued by the Secretary.  Plaintiffs would be required to travel to Ohio and divulge information to the Secretary, under threatened criminal action against them.  Thus, if Plaintiffs do not comply with the subpoenas, the Secretary may pursue criminal sanctions against them.  The Secretary has cited Ohio Revised Code § 3599.37 as the enforcement provision for a witness' refusal to comply with a subpoena issued by him.  Although the issue of whether this criminal statute applies to subpoenas issued by the Secretary during an investigation is not clear, the Hamilton County Court of Common Pleas, in the cases involving the LetOhioVote.org Plaintiffs, concluded that a failure to comply with the Secretary's subpoena, except upon grounds of privilege, is subject to sanction under Section 3599.37.  Therefore, Plaintiff Cummings, the custodian of records for New Models, and Crawford would be required to travel to Ohio from Virginia and appear before the Secretary, pursuant to an invalid subpoena, or face the threat of criminal proceedings being initiated against them.

        c.      Substantial Harm to Others and Public Interest

The Court recognizes that the State of Ohio has a substantial interest in investigating campaign finance violations, and the Secretary's inability to subpoena out-of-state witnesses in the context of an investigation may hinder the investigation.  However, balancing the interest of the state to investigate alleged campaign finance violations versus other factors weighing against the authorization of such authority, is within the province of the legislature, not this Court.

For these reasons, the Secretary is enjoined from issuing out-of-state subpoenas to

Plaintiffs Cummings, New Models, and Crawford.

### III. Secretary's Motion to Dismiss filed in Case No. 2:10-cv-1148

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), the Secretary moves to dismiss the claims of the LetOhioVote.org Plaintiffs. The Secretary has moved for dismissal on the basis that the Eleventh Amendment to the United States Constitution bars this Court from hearing two of these Plaintiffs' claims against him, and because this Court, pursuant to the "*Younger* abstention doctrine," should abstain from hearing any of their claims. The LetOhioVote.org Plaintiffs argue that the elements of the *Younger* abstention doctrine do not apply here, and that the Secretary has waived any abstention defense by removing the consolidated cases filed by Plaintiffs Cummings, New Models, and Crawford, to this Court.

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In view of the Eleventh Amendment, a federal court cannot direct a state official to conform his or her conduct to state law, as a federal court cannot grant prospective or retroactive relief against a state or nominally against its officials on the basis of state law. *Pennhurst*, 465 U.S. at 106. As stated by the *Pennhurst* Court: "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.* Therefore, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.*

19

Under the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), when state proceedings are pending, principles of federalism dictate that the constitutional claims should be raised and decided in state court without interference by the federal courts.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987).  Three requirements must be met for *Younger* abstention to be appropriate: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceeding to raise constitutional challenges.  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001); *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995).  The *Younger* abstention doctrine does not apply under three exceptional circumstances:  (1) where the state proceeding is pursued with an intent to harass; (2) where the state proceeding is conducted in bad faith; and (3) where the challenged state statute or authority is flagrantly and patently unconstitutional.  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603-613 (1975).  Abstention is designed to promote "federal-state comity, [and] is required when to render a decision would disrupt the establishment of coherent state policy."  *Akenbrandt v. Richards*, 504 U.S. 689, 704-05 (1992).

The LetOhioVote.org Plaintiffs asserted six claims against the Secretary and the Elections Commission Defendants.  These Plaintiffs allege a violation of their rights to freedom of speech under the First Amendment (Count One), violation of their rights to freedom of association under the First Amendment (Count Two), violation of their rights to freedom from retaliation under the First Amendment (Count Three), and violation of their rights to due process under the Fourteenth Amendment (Count Four).  Plaintiffs also seek declaratory judgment under Ohio campaign

finance statutes (Count Five) and Ohio campaign finance reporting statutes (Count Six).  Pursuant to the Agreed Order of Partial Dismissal (Doc. 37), Counts Five and Six have been voluntarily dismissed without prejudice.  Therefore, Counts One through Four remain pending.

The Secretary argues that this Court should abstain from hearing any of the claims of the LetOhioVote.org Plaintiffs because the issues involved in Counts One through Four, as well as Count Six, of their Complaint are currently pending in state tribunals.  Because Count Six already has been dismissed pursuant to the agreed order, the Court will focus its abstention analysis on Counts One through Four of the Complaint.

In June 2010, LetOhioVote.org and its members filed a lawsuit against the Secretary in the Hamilton County Ohio Court of Common Pleas seeking declaratory and injunctive relief in connection with the investigatory conduct of the Secretary.  The Plaintiffs in that case challenged the lawfulness of the Secretary's conduct in relation to her investigation of potential violations of Ohio's campaign finance statutes.  At issue in that case is the nature of the investigatory authority of the Secretary, including his authority to issue subpoenas, as it relates to campaign finance law.  Although that case remains pending in state court, the Plaintiffs initiated their action in this Court challenging the conduct of the Secretary as it relates to his investigation of LetOhioVote.org.  Therefore, there is an ongoing state proceeding.  Additionally, it cannot be disputed that the proceedings in Hamilton County implicate an important state interest, as the "oversight of state and local elections is clearly an important state interest." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 634 (6th Cir. 2005).

The Court first will address whether the Secretary has waived any abstention defense by removing to this Court the actions filed in state court by Plaintiffs Cummings, New Models, and

21

Crawford.  Indeed, there is case law support for the principle that the *Younger* abstention defense is waived when an action is removed from state court and federal jurisdiction is thereby invoked by the defendant.  *See Ash v. City of Clarksville*, No. 3:03-0380, 2004 WL 5913273 (M.D. Tenn. Sept. 3, 2004).  The application of waiver in such a situation makes good sense because "[i]t would be fundamentally unfair to permit State Defendants to argue that [a federal court] must abstain from hearing the case after they voluntarily brought the case before [the federal court]." *Kenny A. ex rel Winn v. Perdue*, 218 F.R.D. 277, 285 (N.D. Ga. 2003).  This waiver principle would bar the Secretary from asserting abstention in the actions brought against him by Plaintiffs Cummings, New Models, and Crawford, because the Secretary removed these actions to federal court.  But this principle does not directly apply to the action brought by the LetOhioVote.org Plaintiffs, as they initiated this action in this Court.

The LetOhioVote.org Plaintiffs argue that there is an "incongruity in the Secretary's removing two cases containing federal claims to federal court and then attempting to argue that the same federal claims brought in a consolidated case, which arose out of the same set of facts and circumstances, should have been brought in state court."  (Doc. 34, p. 10).  While there is some appeal to the LetOhioVote.org Plaintiffs' argument, as these cases involve some of the same issues relating to the Secretary's authority to issue subpoenas, these cases involve different parties and different issues.  Therefore, the Court does not find that the Secretary is precluded from asserting the *Younger* doctrine in the case initiated in this Court on the basis that the Secretary removed the actions filed by Plaintiffs Cummings, New Models, and Crawford.

The LetOhioVote.org Plaintiffs do not challenge the Secretary's contention that the first two requirements of the *Younger* abstention doctrine are established here.  At issue is whether

LetOhioVote.org and its members had an "adequate opportunity" to raise constitutional claims in state court.  The LetOhioVote.org Plaintiffs argue that they did not have an "adequate opportunity" to bring federal claims in the state proceeding, and therefore the third element of the *Younger* abstention doctrine has not been established.  The Secretary argues that these Plaintiffs had the opportunity to raise federal constitutional claims in their state court case, and that they even mentioned alleged violation of their constitutional rights in their state court complaint.

The LetOhioVote.org Plaintiffs assert that the Secretary unpersuasively argues that the state court case provided them with an adequate opportunity to bring their federal claims simply because they referenced or mentioned constitutional rights in a footnote of their state court complaint.  Citing *Citizens in Charge v. Brunner*, No. 2:08-cv-1014, 2010 WL 55337 (Jan. 5, 2010) (Sargus, J.), the LetOhioVote.org Plaintiffs argue that "the only federal constitutional claims from which it would be appropriate for this Court to abstain are those which would necessarily be decided as part and parcel of Plaintiffs' state law claims."  (Doc. 34, p. 8).  The *Citizens in Charge* case, citing *Habich v. City of Dearborn*, 331 F.3d 524, 531 (6th Cir. 2003), seems to suggest that it is the general rule that a party may voluntarily choose to split claims, based on the same operative facts, by initially bringing its state claims in state court and then bringing its federal claims in federal court.  But, in 2007, the Sixth Circuit noted that the "narrowly carved out" exception to *Younger* set forth in *Habich* applies "where the issues raised in the federal lawsuit were 'collateral' to the state proceedings-that is-the plaintiff's suit would not be resolved by the case-in-chief or as an affirmative defense to the state court proceedings."  *Am. Family Prepaid Legal Corp. v. Columbus Bar Assoc.*, 498 F.3d 328, 336 (6th Cir. 2007).

Applying the "collateral" concept to the facts before it, the *Habich* court explained: "The

key question here is whether the state proceeding would afford Mrs. Habich an adequate opportunity to raise her constitutional claims.  Because the state proceeding involved only the collateral issue of whether Habich was renting her property to a tenant, and thus the prospective issue of whether the City could inspect the house for a certificate of occupancy, there would be no opportunity for Habich to raise her constitutional claims, which raised the questions of whether her constitutional rights had been violated." *Id.* at 530.  Ultimately, the key question remains "whether the state proceeding would afford [the plaintiff] an adequate opportunity to raise . . . constitutional claims." *Habich*, 331 F.3d at 530.  That is, "[a]s long as the relief sought in the 'collateral' federal claim will not unduly interfere with the state court proceedings, a court should not abstain from hearing it." *Maduko v. Illinois*, No. 07-c-4701, 2008 WL 4279982 (N.D. Illinois Sept. 17, 2008) (citing *Am. Fed'n of State, County & Mun. Employees v. Tristano*, 898 F.2d 1302, 1305 (7th Cir. 1990)).

Here, the LetOhioVote.org Plaintiffs had an adequate opportunity to present their federal claims in state court.  The central issue in their state court action is whether it was proper for the Secretary to subpoena these Plaintiffs as part of his investigation of alleged violations of Ohio campaign finance law.  In fact, in a footnote contained in their amended complaint in state court, these Plaintiffs asserted that "[i]n addition to the state law issues raised in this complaint for an injunction, the subpoenas implicate Plaintiffs' federal constitutional rights, including their First Amendment rights to freedom of speech and association."  (Doc. 22-1).  The LetOhioVote.org Plaintiffs are correct insofar as they argue that simply because they referenced or mentioned federal constitutional rights in their state court complaint does not mean that they had an adequate opportunity to raise their federal claims.  However, the reference to these rights reflected their

awareness that these rights were implicated by the underlying operative facts.  That these Plaintiffs chose not to present and litigate their federal claims in state court, as part of their attempt to challenge the propriety of the Secretary's issuance of subpoenas to investigate alleged campaign finance law violations, does not change the fact that they had an adequate opportunity to present their federal claims.  In essence, the LetOhioVote.org Plaintiffs' federal claims present an alternative means to challenge the propriety of the Secretary's investigation into LetOhioVote.org's referendum efforts.  Thus, the LetOhioVote.org Plaintiffs' federal claims are not "collateral" to their state law claims, as that term was used in the *Habich* case.  Consequently, the "narrow exception" discussed in *Habich* does not apply here.

Accordingly, the Court finds that the three criteria for applying the *Younger* abstention doctrine applies here, and that the Secretary has not waived the application of the abstention doctrine as it relates to the LetOhioVote.org Plaintiffs.  Consequently, the Court must determine whether to dismiss the LetOhioVote.org Plaintiffs' claims without prejudice or stay the matter pending resolution of the state proceeding.  *See Carroll v. Mt. Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).  The LetOhioVote.org Plaintiffs assert that, if abstention is warranted, this Court should stay, rather than dismiss, the proceedings relating to their claims against the Secretary, especially in view of their "claim for attorneys' fees under 42 U.S.C. § 1988."  (Doc. 34, p. 11).  Indeed, when application of *Younger* abstention is proper and the plaintiff is seeking money damages and equitable relief the appropriate procedure is to stay the proceedings rather than dismiss the case without prejudice.  *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995).  However, "dismissal without prejudice is proper under *Younger* for equitable claims."  *See Louisville Country Club v. Kentucky Comm'n on Human Rights*, 221 F.3d 1335, 1335 (6th Cir.

25

2000) (unpublished table decision) (citing *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)); *Kalniz v. Ohio State Dental Bd.*, 699 F. Supp.2d 966, 970 (S.D. Ohio 2010) (Marbley, J.).  Here, the LetOhioVote.org Plaintiffs do not assert a claim for money damages in this Court.  And their request for attorneys' fees is not an independent claim, but is ancillary to their claims for declaratory and injunctive relief.  Thus, the Court resolves that dismissal without prejudice is appropriate.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs Cummings, New Models, and Crawford have demonstrated that the circumstances demand injunctive relief, and therefore **DENIES** the Secretary's Motions to Dissolve the State Court Injunction (Doc. 9 in case Nos. 2:10-cv-982, and Doc. 10 in case No. 2:10-cv-983).  Consequently, insofar as the motions filed by Plaintiffs Cummings, New Models, and Crawford, seeking injunctive relief are deemed pending, they are all **GRANTED**.  Accordingly, the Secretary is permanently enjoined from issuing out-of-state subpoenas in connection with his investigation of LetOhioVote.org. Furthermore, the Court **GRANTS** the Secretary's Motion to Dismiss (Doc. 22 in case No. 2:10-cv-1148).  Accordingly, the claims against the Secretary set forth in case No. 2:10-cv-1148 are **DISMISSED** without prejudice.

The Clerk shall remove Documents 4, 5, and 9 in case No. 2:10-cv-982, Documents 4, 5, and 10 in case No. 2:10-cv-983, and Document 22 in case No. 10-cv-1148, from the Court's pending motions list.

The Clerk shall remove case Nos. 2:10-cv-982, 2:10-cv-983, and 2:10-cv-1148, from the Court's pending cases list.

**IT IS SO ORDERED.**


*s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**